1818.

SHOTTENKIRK
v.
WHEELER.

Nov. 12 and 14, 1817, and Jan. 6, 1818.

SHOTTENKIRK and others *against* WHEELER and others.

A judgment creditor, other than the mortgagee, may sell the equity of redemption on execution.

Though a judgment at law may be impeached, in this court, for fraud; yet this court will never interfere with a judgment at law on the ground of irregularity; but the record of the judgment, and execution, and title under them, are a conclusive bar in equity. It belongs to the court of law, exclusively, to inquire into the regularity of its judgment.

It *seems* that a court of law will not set aside a judgment, after a lapse of 20 years, on the ground of irregularity.

THE amended bill, filed the 16th of *August*, 1814, stated, among other things, that *Abraham Skinner*, on the 8th of *May*, 1783, executed a mortgage of a farm, of which he was then seized, in *Amenia*, in *Dutchess* county, to *Joel Harvey*, jun. to secure the payment of certain bonds. Part of the money was paid by *A. S.*, in his life time, and he continued in possession of the premises until the 5th of *February*, 1787, when he died, leaving six infant children, from one to ten years of age. *Chav S.*, a son, died intestate, in 1805, leaving three children, plaintiffs. *Joel*, another son, died intestate, and without issue, in 1811, and *Thomas* was a lunatic, and his committee, with the three daughters, and their husbands, were, also, plaintiffs. The heirs of *A. S.* remained in possession of the premises, after his death, until 1789, during which time, *Persis S.*, his widow, had the management of the estate, as guardian to her children. On the 8th of *July*, 1789, she, as widow and guardian, released 53 acres, part of the mortgaged premises, to *Thomas Thompson*, who took possession, and which has since been held under that release. Three of the infant children of *A. S.* continued to reside on the residue of the mortgaged premises until 1799. The widow, who married *W. Bishop*, the 10th of *September*, 1789, con

tinued to reside on the residue of the premises, until 1799, when *Noah Wheeler* took possession under claim of title. Six of the defendants have held possession under the persons who so entered, and have received the rents and profits, stated to be of the value of 500 dollars per annum, since 1799, to the present time. The bill charged, that they committed waste on the premises. *J. Harvey*, the mortgagee, died about the 10th of *December*, 1795, and his executors were made defendants. *Thomas Thompson* died in 1795, intestate, and his administrators were, also, defendants.

The bill further stated, that the defendants denied the right of the plaintiffs to redeem, asserting their title, &c. Prayer, that the defendants may account for the rents and profits, and waste committed, and that the plaintiffs may be let in to redeem, &c.

The answer of the defendants stated, that *Joel Harvey* gave one of the bonds of *A. Skinner*, to his son in law *Thomas Thompson*; and to secure the payment of it, *A. S.* on the 8th of *March*, 1786, gave to *T. T.* a judgment bond for 226 pounds, payable the 1st of *October*. The plaintiffs alleged that *A. S.* was insane when he gave the judgment bond; but this was denied by the answer. On the 11th of *April*, 1787, judgment was entered up on the bond, for 452 pounds debt, and 7*l.* 3*s.* 6*d.* costs, on which a *fi. fa.* was issued, returnable in *April* term following, which was retured by the sheriff, indorsed, "I have levied to the value of 5 pounds, and not sold for want of buyers; which execution, the defendants stated, was actually levied on the mortgaged premises. On the 28th of *April*, 1787, a writ of *venditioni exponas* was issued, reciting the *fi. fa.*, return, &c. which writ was made returnable on the last *Tuesday* of *July:* That the sheriff, for want of goods and chattels, sold all the right of *A. Skinner* in the mortgaged premises, to 208 acres and three quarters, or 23 pounds, and to 54 acres, for 71 pounds; and on the

3d of *December*, 1787, the sheriff executed a deed to *T.
T.*, set forth in the answer, and which recited the *fi. fa.*,
its return, &c. the *venditioni exponas*, &c. by virtue of
which he sold the land on the 20th of *July* to *T. T.* as
the highest bidder; this deed also recited the mortgage by
*A. S.* to *Harvey*, and that he had afterwards released the
54 acres to *A. S.* The defendants insisted, that by the
sheriff's sale, the equity of redemption passed to *T. T.*, and
that whether the judgment and execution were irregular
or erroneous, were questions of law exclusively, and to be
determined by the supreme court, in which the judgment
was rendered. That the plaintiffs had applied to the
supreme court to set aside the judgment and execution
for irregularity, on the grounds stated in their bill, which
was refused. The defendants disclaimed all title to
53 acres; and they stated further, that, in 1795, the ex-
ecutors of *Joel Harvey*, jun., filed a bill in this court
against *Thomas Thomson* to foreclose the equity of re-
demption; and that prior to the 28th of *July*, 1795, a de-
cree was passed for the sale of the mortaged premises,
except the 53 acres, and that on the 28th of *July*, 1795,
a *venditioni exponas* issued to the sheriff, to sell the mort-
gaged premises, which were sold on the 15th of *Octo-
ber*, 1795, at auction, for 100 pounds, except the 53 acres,
to *R. De Cantillon*, to whom a deed was executed, which
was set forth in the answer. That *Harvey* assigned one
of the bonds to *E. D.* defendant, another to *R. De Can-
tillon*, and another to *James S. Smith*, who, on the 15th of
*September*, 1796, purchased the widow's right of dower,
and all other right under *T. Thompson;* and on the 17th of
*June*, 1797, they sold 209 acres to the defendant, *N. Whee-
ler*, for 2,500 dollars, who occupied the same untill *July*,
1813, when he conveyed the same to his three sons, de-
fendants.

*John Lloyd*, a witness, aged 81 years, testified, that he
was the deputy sheriff, who received the execution, and the

1818.

SHOTTENKIRK
v.
WHEELER.

*venditioni exponas ;* that he did not sell the real estate of *A. S.,* there being goods enough to satisfy the execution.

It appeared that *A. S.,* died in *February,* 1787, and that judgment was not entered on the bond and warrant, until the 12th of *April* following ; and the plaintiff insisted that the judgment was therefore void, and no lien on the equity of redemption : that the execution was not pursuant to the form prescribed by the 7th section of the act of the 19th of *March,* 1787, and was void, and gave the sheriff no authority to sell : that the plaintiff did not levy on the premises, before the return day of the execution, nor did he return that he had levied on any lands, &c. That no such writ of *fi. fa.* had issued as was mentioned in the *venditioni exponas,* and that the *vend. exp.* was issued and tested after the death of *A. S.,* and did not conform to the statute ; and that for these reasons the sale was void.

The cause was brought to a hearing on the 12th of *November* last.

*Cady,* for the plaintiff.

*P. Ruggles,* contra.

*January 6, 1818.*

THE CHANCELLOR. This is a bill filed by the heirs of *Abraham Skinner,* a mortgagor to redeem.

The defendants have raised several objections in bar of the demand.

The first, and perhaps the only objection which it will be requisite to consider, is the sale of the equity of redemption under a judgment and execution at law against *Skinner,* in favour of *Thomas Thompson.* The equity of redemption in the mortgaged premises was purchased at such sale by *Thompson,* and the premises are now held, partly under deeds from him, and partly under a foreclosure of the mortgage, and a sale under a decree of this

court against *Thompson,* in whom the equity of redemption resided.

The defendants have given in evidence, the judgment in the Supreme Court, entered by confession, as of *January* term, 1787, against *Skinner,* in favour of *Thompson,* and a sheriff's sale by execution, under that judgment, of all the mortgaged premises, in *July,* 1787, and a sheriff's deed to *Thompson,* the purchaser, of the date of the 3d of *December,* 1787.

Unless the plaintiffs can avoid the force and effect of that judgment, execution, and sale, there is an end of their claim.

It is not to be made a question, whether a judgment creditor, other than the mortgagee, may not sell the equity of redemption, on execution at law. The validity of such a sale has received a sanction in our courts, that is not now to be shaken. But the counsel for the plaintiffs has undertaken to show, that the judgment and the proceedings under it, were irregular and void. He has detected so much apparent irregularity, that, probably, he might have succeeded in an application to the Supreme Court, if he had made it in due time. The application was, indeed, made in *February* term, 1811, (7. *Johns. Rep.* 556.) upon affidavits, disclosing all the facts upon which the judgment and the proceedings under it are now assailed. I remember the case; and I remember, also, the decision which, in the name of the court, I pronounced in the cause, " that after the lapse of 20 years, no judicial proceeding whatever ought to be set aside for irregularity."

I am now called upon, sitting in this court, to do the same thing, in effect, by disregarding the title under the judgment, and letting in the plaintiffs to redeem. It is now upwards of thirty years since that judgment was rendered, and sale made; and the force of the application is not only still further weakened by time, but is also made to a tribunal which has no jurisdiction over the question of ir-

regularity in a judgment at law. The difficulty is truly stated in the answers of the defendants, that "whether the judgment and execution are irregular or erroneous, are questions exclusively at law." As long as the judgment and execution remain in force, and are not set aside at law, they must be received in this court as of legal validity.

A judgment at law may be impeached in this court for fraud; but there is no case in which equity has ever undertaken to question a judgment for irregularity. The power of a court of law is always exercised, in such cases, in sound discretion; and the relief is frequently granted upon terms. This court cannot impose any such terms, or take any such cognizance of the case; and the title set up under the judgment and execution must be received here as a conclusive bar. The case of *Baker* v. *Morgan*, (2 *Dow's Rep.* 526.) decided in the *English* House of Lords, in 1814, lays down the same rule; and the doctrine coming from such masters of equity, as Lord *Redesdale* and Lord *Eldon*, is undoubtedly to be considered as correctly declared. If there had been any case warranting the interference of chancery with an irregular judgment, they would have known it. In that case, a recovery in ejectment was impeached after the lapse of 25 years, as null and void, on the ground of irregularity, and it was declared by them, that they had never heard before of equity trying a proceeding at law for irregularity. Lord *Eldon* said, "he could not imagine how, upon a bill filed in 1806, equity ought to trust itself to examine, as the ground of decree, whether a judgment in 1781, was regularly obtained."

If the judgment and execution cannot be set aside or questioned, on the ground of irregularity, we surely cannot now go into parol proof, upon this case, whether there was a sale of the mortgaged premises. We have the sheriff's return to the *venditioni exponas*, that he had sold of

the goods and chattels, lands and tenements, of *Abraham Skinner*, to 175*l*. 3*s*., and that he had no more property in his bailiwick whereon he could levy the residue of the debt. That *venditioni exponas* recited, in form, and *in extenso*, the return endorsed on the previous *fi. fa.*, by which it appears, that the sheriff had levied on the goods and chattels, lands and tenements, and that they remained unsold for want of buyers. We have, lastly, the sheriff's deed of *December*, 1787, reciting the process of execution, the seizure or levy, the return, and the subsequent process and sale, on the 20th of *July*, 1787, of the mortgaged premises to *Thomas Thompson*. After such official and authoritative documents, can we now listen to the deposition of a former deputy of the sheriff, who is upwards of 80 years of age, and who undertakes to say from memory, that the goods and chattels of *Skinner* were sold under the execution and judgment, but not the lands and tenements. It would be impossible to suggest testimony more dangerous in itself, more contrary to rule, and more palpably inadmissible.

I am, accordingly of opinion, that the plaintiff's bill be dismissed, with costs.

Bill dismissed.