## BROOKS, ET AL. v. HARRISON.

1. A bond executed for the delivery of property, levied on by execution, when returned " forfeited" has the force and effect of a judgment, and execution may issue thereon, against the obligors; but it is competent for one whose name has been forged as a surety to such a bond, to go into equity, and injoin the execution, upon an allegation that the use of his name was unauthorized.
2. The clerk of the Court who has *accepted* a bond for the prosecution of a writ of error, is an essential party to a bill in equity, filed by one whose name appears as a surety, upon an allegation that, as to him, the bond is a forgery.

THE defendant in error, filed his bill in equity against the plaintiff, in the Circuit Court of Montgomery, in the spring of 1835, alleging that Martin Brooks recovered a judgment in the County Court of that County, against Sterling E. Harrison, for the sum of five hundred and eighty dollars, and costs of suit— that an execution, issued on that judgment, was levied on the 26th March, 1834, by William Gregory, then Sheriff of Montgomery, on a negro woman, the property of Sterling E. Harrison; for the delivery of whom, he executed a bond to the sheriff, with the name of the defendant thereto subscribed.

The negro woman not being delivered at the time designated, the delivery bond was returned forfeited, and an execution issued against Sterling E. Harrison, and the defendant. To supersede this execution, a writ of error was sued out, and a bond for its prosecution executed by Sterling E. Harrison with Eli T. Robinson, to which the name of the defendant was subscribed as a surety.

The judgment of the County Court being affirmed on error, an execution was again issued, and levied on the property of Sterling E. Harrison, and a bond taken for its delivery by Bushrod W. Bell, then sheriff of Montgomery—this bond was executed by Sterling E. Harrison and Joseph L. Dackney, and was subscribed with the name of the defendant as a surety.

The defendant denies that he executed, or authorized the execution of, either of these bonds, and insists that, as far as he is a party, they are all forgeries; notwithstanding which, an execution had issued upon some one of them, and was then in the sheriff's hands, requiring the arrest and detention of his body, to satisfy the judgment, with all costs.

The bill makes Martin Brooks, Sterling E. Harrison, Bushrod W. Bell, and David Campbell, the administrators of William Gregory, deceased, defendants, and prays that all proceedings against the complainant may be injoined, &c.; and that process of *subpœna* may issue to the defendants to the bill. An injunction was accordingly ordered.

The defendants demurred generally to the bill. Several depositions were taken by the complainant, which, unopposed by other proof, very satisfactorily shew that he did not execute either of the bonds referred to in his bill.

The cause coming on to be heard, the demurrer was overruled, and the bill considered as confessed, for want of an answer. And the proof being sufficient to shew, that the bonds so far as the complainant was concerned, were forgeries, the injunction was perpetuated at the costs of the defendants below. To revise this decree, a writ of error has been prosecuted to this Court.

GOLDTHWAITE, for the plaintiff in error.
DARGAN, for the defendant.

COLLIER, C. J.—The plaintiffs in error, insist. 1st. That their demurrer to the bill should have been sustained; 2nd, that the decree is irregular in perpetuating the injunction, without having first required an answer, or on failure to answer, to have taken the bill *pro confesso.*

1. In considering the first question, we are to inquire : first—do the facts stated in the bill, entitle the complainant to

the interposition of a Court of Equity? Second—was the Clerk of the County Court, who accepted the bond, for the prosecution of a writ of error, a necessary party to the bill?

First—Our statutes, in regard to delivery bonds, declare that, upon the bond being returned *forfeited,* to the proper office, it shall have the force and effect of a judgment, and an execution shall issue against "all the obligors therein." [Aik. Dig. 171.] And where a bond is given for the prosecution of a writ of error, upon an affirmance, a judgment is rendered not only against the plaintiff in error, but all who are obligors in the bond. Such being the character of the several bonds, against which relief is sought, it follows that the defendant in error, has had no opportunity of making a defence at law.

The practice heretofore prevaling in this State, has been adverse to the right, of the judge of a Court from which an execution issues to supersede it in vacation; unless it be for an irregularity, apparent upon the record. In Fryer v. Austill, 2 Stewart's Rep. 119, it appeared that an execution had issued against a principal and his surety, and that a part of the money had been made by a levy on, and sale of the principal's effects; but the sheriff returned "no money made;" whereupon an *alias* execution, issued against the surety, for the collection of the full amount of the judgment. The sheriff having absconded, it was held, that a Court of law could not afford relief, but the remedy of the surety was in equity alone. This decision was made on the ground that, the proceedings having the appearance of fairness and regularity on their face, it was incompetent for the judge of the Court to supercede it by an order in vacation. In the case at law, there is no pretence, that the delivery bond on which the execution issued, does not in all respects conform to form, and consequently the case cited is directly in point.

The object of the bill then, is not to set aside the execution for errors apparent in the judgment of affirmance, or on an inspection of the delivery bonds, but, for the forgery of the defendant's name to all the bonds. In this view of the case, it may be assimilated to a judgment obtained by fraud, without any fault on the part of the defendant; which forms a substantive ground for the interposition of equity. [Shottenkirk

v. Wheeler, 3 Johns. Ch. Rep. 275; Foster v. Wood, 6 Johns. Ch. Rep. 90. Peace v. Nailing, Dev. Eq. Rep. 289; Williams v. Fowler, 2 J. J. Marshall's Rep. 405; Saunders v. Jennings, ibid, 513.] The defendant in error does not appear to have been guilty of neglect, in not having shewn at an earlier period, that the bonds had not been executed by him. We infer that he was not aware, that his name had been used, and that consequently he could have done no act evincing an authority to any one to bind him. Upon this hypothesis, the jurisdiction of equity is clearly defensible. [Thomas & Harris v. Hearn, et al. 2 Porter's Rep. 262; Mock v. Cundiff, 6 Porter's Rep. 24; French v. Garner, et al., 7 Porter's Rep. 549.

But it is argued for the plaintiffs in error, that the case stated in the bill does not authorize the interference of equity; that no fraud being imputed to Martin Brooks, nor the solvency of Sterling E. Harrison denied, the complainant must pay the execution, and reimburse himself by suit at law, against the party committing the forgeries, or the officers by whose neglect it was permitted. To sustain this argument, the case of Denton, et al. v. Noyes, 6 Johns. Rep. 296, has been cited. That was a motion to set aside a judgment, and all subsequent proceedings in a cause, for irregularity; the motion was supported by an affidavit, stating that a *fieri facias* had been issued on the judgment, which was levied on the property of the defendant; that the defendant was never sued by the plaintiffs for any demand; that he had never authorized them or any one else, to appear for him to a writ, or to confess a judgment for him. The Court held that, as it appeared the judgment was confessed by an attorney of the Court, it was regular; that an appearance by an attorney without a warrant or other authority, was good as to the Court, and that the defendant was entitled to an action against the attorney. If there was any fraud or collusion between the respective attorneys for the plaintiff and defendant; or if the attorney for the defendant was not responsible or perfectly competent to answer to his assumed client, they would relieve the party against the judgment, otherwise a defendant might be undone. The Court said further, that though they would let the judgment stand, in order to protect the plaintiff from a loss by the act of

the attorney, yet to save the defendant from injury, they would stay all proceedings, and let him in to plead, if he had any defence. The opinion of the Court was doubtless influenced by considerations peculiarly applicable to attornies at law; for they say that, "by licensing attorneys, the Courts recommend them to the public confidence; and if the opposite party, who has concerns with an attorney, in the business of a suit, must always at his peril, look beyond the attorney to his authority, it would be productive of great public inconvenience. It is not usual for an attorney to require a written warrant from his client. He is generally employed by means of some secret confidential communication. The mere fact of his appearance is always deemed enough for the opposite party, and for the Court. If his client's denial of his authority, is to vacate all the proceedings, the consequences would be mischievous. The imposition might be intolerable." The decision, it is true, is supported by some adjudications. [Smith v. Bowditch, 7 Pick. Rep. 137; Field v. Gibbs, et al. 1 Peters's C. C. Rep. 155; Wyckoff v. Beyer, Coxe's N. J. Rep. 214; McCullough v. Guefner, 1 Binney's Rep. 214,] yet it has been directly opposed by others. [Crichfield v. Porter, 3 Ohio Rep. 518; Atkinson v. Commissioners of Pickaway, 1 Ohio Rep. 375; Handley v. Statelor, 6 Litt. Rep, 186; see also Robson v. Eaton, 1 Term Rep. 62; Archb. Plead, 166.] Without attempting to inquire whether in our opinion it should be recognized as an authority, in a case in which the facts are analogous, we cannot think of extending the principle upon which it was decided to the case at bar.

It is an acknowledged principle of law, as well as of natural justice, that no person can be bound by the act of a stranger, in whom he has vested no authority, nor reposed any confidence, and over whom he can exercise no control. True, the *prima facie* intendment always is, that public officers have discharged their duty according to law; yet this presumption will not bar a direct proceeding, which assumes that they have been guilty of a nonfeasance or misfeasance. In the case before us, the complainant confided nothing to the clerk of the County Court, or either of the sheriffs, who received the bonds. It was their duty to have required the signature or ac-

knowledgment of all the obligors, before they received the bonds, with the preparation and reception of which, they were respectively charged ; and if they have received simulated bonds, they, and not the person whose name has been forged, must answer to the party interested.

Second : but although the bill is not wanting in equity, we think it shews on its face, that the individual who was clerk of the County Court, at the time the writ of error bond was executed, was a material party, and that, consequently, the failure to join him was good cause of demurrer. If the forgery of that bond, so far as the complainant is concerned, is established, then a right of action arises in favor of Brooks against the clerk; and that he might shew, that the name of the complainant was used by his authority, the clerk should have been made a defendant.

The object of a Court of equity, is to do complete justice, and to settle the controversy forever ; by binding all the parties interested in it, that this may be done, it is necessary that they should all be bro ight before it, for its decree only binds those who were parties to the litigation. Caldwell v. Taggart, 4 Porter's Rep. 190; Lube' Eq. 22, note 1 ; Story's Eq. Plead 74. et. post; West v. Randall, 2 Mason's Rep. 181 ; Trescot v. Smith, 1 McCord's Ch. Rep. 301 ; ¡Duncan v. Mizner, 4 J. J. Marsh's Rep. 447; Clark v. Long, 4 Rand Reports, 451 ; Crocker v. Higgins, 7 Conn. Rep. 342 ; Allen v. Hall, 1 Marshall's Rep. 527 ; Whelan v. Whelan, 3 Cow. Rep. 538 ; Colt v. Lasnier, ibid. 320 ; a decree in the present case in favor of the complainant, does not conclude the rights of all parties. The genuineness of the writ of error bond, might be shewn by the clerk in his defence, to an action by Brooks against him ; and it would, also be an open question, as between the complainant and the clerk. The demurrer then, was well taken for a non-joinder of parties.

2. It is unnecessary to consider the second point, raised by the plaintiffs in error, in respect to the necessity of a formal or der, taking the bill *pro confesso,* &c., after the demurrer was overruled, as that question cannot arise in the further progress of the cause.

The decree of the Court below is reversed, and the cause remanded to the Court of Chancery sitting at Montgomery, that proper parties may there be made, and such further proceeding had, as is consistent with this opinion. The costs of this Court are to be paid by the defendant in error.