ELDRIDGE AND ANOTHER v. TURNER, BY HIS NEXT FRIEND, &c.

1. Where one person proposes to sell property to another, and as an inducement to purchase, offers to take the vendee's note for the price, *payable to the vendor for the use and benefit of an infant son of vendee*, and to hold the money for the *cestui que trust*; if the vendee accedes to the offer and gives a note in the form proposed, the contract will be obligatory upon the parties, and the payee will be regarded as a trustee for the son.

2. The indorsement of a note which, upon its face is payable to one person for the use of another, cannot impart to the indorsee a right to receive the money due thereon, for his own benefit; but the indorsement is a breach of trust on the part of the payee, which entitles the *cestui que trust* to assert his right to the proceeds of the note, in a court of equity.

3. E., as the indorsee of C., of a note payable to the latter for the use of another person, recovered a judgment against F. in Talladega, the *cestui que trust* filed a bill in another chancery district, asserting his right to the money, praying that a collection of the judgment be enjoined, and that the defendant therein be a trustee for the complainant of the amount due and to become due thereon: *Held*, that it was competent for the complainant to have instituted his suit in any district in which T. resided, and that an objection by E. and C. alone, that the bill should have been filed in Talladega is not available.

4. Where the testimony supports the allegations of a bill *substantially*, this is all that is required; and relief will not be denied, because there is a discrepancy between the case as alledged and that proved in some unimportant particular.

5. Where the complainant alledged, that a note payable *in totidem verbis* to C. for his use, made under a contract between C. and T., by which C. was to receive the money for the complainant's benefit, and C. denied the allegation, the denial will be overbalanced by the production of the note and the positive testimony of one witness supporting the bill.

6. If an objection that the deposition of one of the defendants who was examined at the complainant's instance, was not taken under an order for that purpose, is not made in the primary court, it will not be entertained on error.

7. Where one of the objects of a bill is to enjoin a judgment recovered by the indorsee of a note, the indorsee is a necessary party, and if he die pending the suit, it should be revived against his personal representative.

Writ of Error to the Court of Chancery sitting in Benton.

THE defendant in error filed his bill against John M. Eldridge, Henry B. Turner and James W. Camp, in which a case is stated substantially as follows : About the third day of November, 1840, the defendant, Turner, executed a note by which he promised to pay to the defendant, Camp, for the benefit of the complainant, the sum of five hundred dollars for value received, which was accepted and received by the payee for the use expressed upon its face. At the February term of the county court of Talladega, holden in 1844, a judgment was rendered on this note at the suit of the dedfendent, Eldridge, its indorsee, against the maker—which was affirmed by the supreme court on error.

The circumstances under which the note was executed were these : the defendants, Camp and Turner, and one Bradford were the owners, in equal shares, of a stallion, called "Whale Bone"—then in possession of Camp, altogether profitless. Camp proposed to Turner, that if he would make the note, he should have his (C's) interest in the stallion, and that the latter would hold and keep the note for the use and benefit of the complainant, until he (complainant) should attain the age of twenty one years, and then it should be de-

livered over to him; which agreement and undertaking, on the part of the payee, was the sole inducement of his co-defendant, Turner, to make the note.

Camp delivered the stallion to the defendant, Turner, who is the complainant's father, and the latter, willing to participate in the liberality of Camp, gave the note for more than his interest in the horse was worth.

Eldridge became the proprietor of the note with a knowledge of the complainant's interest therein, but notwithstanding this, is endeavoring to coerce a collection of his judgment —claiming the same for his own benefit.

Complainant is apprehensive if the judgment should be satisfied, and pass into the hands of Camp or Eldridge, he will have great difficulty in recovering the same, even if he ever should succeed. He has confidence in the continued solvency of his father, and would therefore prefer that the amount of the judgment should remain in his hands, as a trustee for complainant.

The bill prays an injunction to restrain the collection of all the judgment but the costs; that the defendant therein be a trustee for the complainant in respect to the amount due and to become due on the judgment; and that such other relief as may be proper be granted. An injunction was granted accordingly.

Eldridge, in his answer, admits the recovery of the judgment in his favor, as alledged in the bill, affirms that the note was indorsed to him fairly, and *bona fide* by the payee—avows his belief in the answer of his co-defendant Camp, and insists that the complainant may be required to make out his case by strict proof.

Camp denies that he ever proposed to make a gift to the complainant, except in the following manner. At the time the note was made, the maker thereof and himself had a settlement of their accounts, in which the latter fell in his debt $333 33; thereupon, this defendant being anxious to dipose of his iterest in the stallion, he proposed to Turner, the maker of the note, that if he would purchase defendant's interest, being one-third, at the price of $166 66, he, defendant, would make a present of that sum to the complainant, who

was then living at defendant's house, and had been for several years previously. This proposition was made upon the express condition, that Turner, the father, would make a deed of gift to his son, the complainant, of a male slave, named Douglass, about twelve or fourteen years of age; which condition it is believed, has not been complied with by the father. The several amounts stated above, constitute the consideration of the note, and of which only $166 66, the price of the father's interest in the stallion, was promised to the complainant, and this upon the condition stated.

This defendant denies that he proposed to the maker of the note, that upon its being perfected by him, he would keep it for the complainant's benefit, until he should attain the age of twenty-one years, and then hand it over to him. He also states, that he paid for clothing and tuition of the complainant while he lived in his family, and upon other accounts, different sums of money, amounting in the aggregate to an amount perhaps equal to that of the note.

The defendant, Turner, admits the truth of all the allegations of the bill, and denies all fraud so far as it concerns himself. His deposition was taken at the complainant's instance; and he testifies that on the 3d day of November, 1840, he executed two notes to Camp; one on a settlement with him, which he believes was for $570 75; this has been paid; the other was given as the price of "Whale Bone," for $500, payable to Camp, for the benefit of the complainant. This note was given at Camp's house, in Madison, upon a desire expressed by him to do something for complainant, whom "he had partially raised," with the understanding and promise that he was to raise and make ample provision for him. Witness did not desire to purchase Camp's interest in the horse, and would not have given so much for it, but with the understanding that complainant was to have the benefit of the money to be paid; and the note thus expressed the witness' undertaking, because he refused to execute it in any other form.

Pending the suit Camp died, and leave was given to revive it against his representatives when known; but it does not appear from the record that they were ever brought in. It is stated in the order preceding the decree, that the parties

came by their solicitors, and that the cause was submitted for hearing upon the bill, answers, demurrer, and proof; whereupon it was insisted that the bill should be dismissed, because it was filed in a chancery district which did not embrace the county in which the judgment sought to be enjoined was rendered. This objection to the jurisdiction of the court was overruled, and the equity of the bill affirmed.

The chancellor was of opinion that Camp became a trustee for the complainant, as soon as the note was made and delivered to him; and that the difficulty of collecting the money from Camp or Eldridge, if the latter should collect the money on his judgment, were sufficient to invest the court of chancery with jurisdiction. Thereupon it was considered that the bill not being revived against the representatves of Camp, abate as to him; and it was ordered and adjudged that the injunction be perpetuated. It was further ordered that it be referred to the register to take an account of the amount due upon the judgment at law, and that he report thereon to the next term, as also whether the complainant has attained his majority.

W. P. CILTON, for the plaintiff in error. The note on which the judgment at law was recovered, was never delivered by Camp to complainant, so that the gift was never consummated. [3 Stew. Rep. 121; 1 Stewt. & P. Rep. 56; 1 Ala. Rep. 52; 2 Id. 117, 648, 669; 7 Id. 470; 4 Kent's Com. 438; 12 Ves. Rep. 39; 2 G. & John. Rep. 208; 11 Cond. Eng. Ch. Rep. 459.] The trust sought to be enforced is both *voluntary* and *executory*—chancery will not execute it, though a consideration moved from the complainant's father to Camp. [2 Ala. Rep. 83; 2 Story's Eq. 236.]

· There is a variance between the contract evidenced by the note and that alledged in the bill, and there is neither *fraud* or *mistake* pretended in making the note payable " ten days after date." Besides this, the bill is prematurely filed, as it is not alledged that the complainant has attained his majorty. [2 Ala. Rep. 571; 9 Id. 31; 7 Wend. R. 248.]

Camp was an indispensable party while living, and after

his death the bill should have been revived against his personal representative.

The judgment was recovered in the circuit court of Talladega—neither Camp nor Eldridge resided in Benton county; consequently the chancery court of the latter could not take jurisdiction of the cause. [8 Porter's Rep. 63; 8 Ala. Rep. 244; 9 Id. 351; Freeman v. McBroom, et al. at this term.] But if all these objections fail, then it is insisted that as the trust involved an isolated monied demand, recoverable at law, equity will not interfere. [8 Porter, 339; 9 Ala. R. 351.]

The answers of Camp and Eldridge deny the material allegations of the bill, and are opposed only by the testimony of the defendant in the judgment. This is not sufficient to overbalance them—the rule requires two witnesses, or one with strong corroborating circumstances.

Eldridge is a *bona fide* holder of the note for value—he did what the maker of the note should have done, viz: he paid it; and should be permitted to recover it. To show that a *voluntary* trust, to be executed *in futuro*, should not be enforced, he cited 2 Story's Eq. 16, 95, 96, 102, 236, 242, 257; 1 Ves. jr. Rep. 52; 6 Id. 656; 18 Id. 91; 3 Meriv. R. 249; 4 Johns. Ch. Rep. 498.

S. F. Rice, for the defendant in error, insisted, that the form of the note indicated a trust for the benefit of the complainant. [6 Ala. Rep. 821.] This being so, Eldridge is charged with a notice of the trust; and besides he failed to prove that he is an assignee for value. His answer upon this point being in avoidance, cannot avail him as evidence.

Camp could not use the trust fund to pay his own debt, or for his own private use, and Eldridge acquiring the note with notice stands in the same predicament. [1 Rob. Rep. (Va.) 107, and note, 112; 5 Rand. R. 195; 1 Hump. R. 210; 1 Mylne & R. Rep. 337.] Camp received the note under an agreement that he would appropriate the proceeds to the benefit of the complainant, and is bound to perform his agree-

ment, whether any pecuniary or other consideration passed to him, or not. [6 Ala. R. 600.]

The objection that the bill is filed in an improper county, cannot be sustained—it should have been made in the primary court as soon as soon as an opportunity offered. But no matter when made, it could not have availed; for the bill is not merely to enjoin a judgment, but to dismiss a trustee and enforce a trust.

COLLIER, C. J.—We cannot think that the bill in this case is wanting in equity. The inducement of the maker of the note, it is alledged, was not only to obtain the payee's interest in the horse which they held as joint property, but to lend his aid in promoting the bounty in favor of his son. How far he may have been influenced by the one consideration, or the other, it is impossible to know, nor is it important to inquire; for it is distinctly affirmed, that his purpose in meeting the proposition of the payee was to secure the amount for which the note was given to the complainant. Conceding that Camp's interest in the horse was worth $500, or even more, yet if he sold it under a stipulation with the purchaser, that he would take his note for that amount, agreeing upon its face that the money should be paid for the benefit of an infant son of the vendee, the vendor, by the acceptance of the note, and delivery of the horse, became a trustee for the son. The contract was consummated by these several acts, and became alike obligatory upon both parties—the vendee was bound to pay the money, unless he could show that the contract was invalid, irrespective of the question of consideration, (6 Ala. Rep. 600;) and the vendor would hold it in trust for the person for whose benefit the note purports to have been made. If, under such circumstances, the vendor could exempt himself from the performance of the trust, then he might successfully practice a fraud on the maker of the note, who but for the destination the money was to receive, never would have entered into the contract.

The indorsement of the note by the payee to Eldridge, though for a full consideration, cannot affect the rights of the beneficiary. Upon its face it purports to be an undertaking

to pay for the *use* of the complainant, (6 Ala. Rep. 821,) and of course informed the indorsee what was the character of the security he received.

Assuming the case made by the bill to be true, and the indorsement of the note was a breach of trust on the part of Camp, which authorized the *cestui que trust* to come in equity and assert his right to the money. To make that right effectual and as expeditious as might be, it was allowable to pray an injuction to restrain the indorsee in the enforcement of his judgment.

The object of the bill in this case is, to secure a trust fund in the hands of the defendant, Turner, and as secondary and ancillary to this object, a judgment against the holder of the fund is sought to be enjoined. It is unlike Shrader v. Walker, et al. 8 Ala. Rep. 244. There the complainant prayed an injunction upon the ground that the judgment was unequitable—being recovered upon a cause of action which should not be enforced. We held that the bill in such a case should be filed in the chancery court of the county where the judgment was recovered. It may be remarked that the necessary parties to the bill resided in 'counties other than that in which it was filed, but whether, if the fact had been otherwise, the result would have been different, no intimation was given. See Freeman v. McBrown, et al. at this term.

In the case at bar, we have seen that the primary object of the bill was not to enjoin a judgment, but to arrest a fund in the hands of a judgment debtor, so as to make it available to the party entitled to it. It is in effect a suit against him, and we think it was competent to have instituted it in any county in which he resided. True, the bill does not alledge where the defendant Turner lives, but he does not object that it is filed in a county which cannot take jurisdiction of the cause, and it is not for a mere accessorial party to ask its repudiation.

The testimony of the defendant Turner was taken at the complainant's instance, and establishes the allegations of the bill as to the purchase of Camp's interest in "Whale Bone," and making the note in question. True, the bill alledges that the payee was to keep the note for the use and benefit of the complainant, until he attained his majority, and then it

should be delivered to him; while the witness merely proves that the money as indicated by the note was to be paid for the use and benefit of the complainant. This discrepancy between the allegation and proof is in our judgment unimportant. The material inquiry was, whether the complainant, in virtue of the contract between his father and Camp, was entitled to the proceeds of the note, and to this, the evidence is direct. Although the answer of Camp may upon this point be a denial of the allegation of the bill, yet we incline to the opinion, that the deposition, corroborated as it is by the note, which expresses a contract in harmony with that proved, is quite sufficient to turn the scale in favor of the plaintiff.

It was intimated at the bar that the deposition referred to, was taken without a special order authorizing it. This suggestion is certainly supported by the record; but as no objection was made in the court below to the reading of the deposition for this irregularity, it could not be excluded here, even if the objection were pressed; and the matter is here mentioned only to prevent surprise on the part of the complainant in the further progress of the cause.

The remaining question is, should the cause have been heard without bringing in the personal representatives of the defendant Camp. This defendant was certainly a necessary party when living. He was one of the two parties to the contract which induced the making of the note—he was its payee, alledged to be the trustee for the complainant, and admitted to be the assignor of Eldridge, whose judgment is enjoined. Unless he had been made a defendant, he would not be concluded by a decree affecting his interest, and the controversy could not in this suit be definitively settled. [2 Ala. Rep. 209.] The matter would be open to further litigation between Eldridge and his assignor's representatives, and between the latter and the complainant. As the object of a court of equity is to do complete justice and to settle the controversy forever, the cause should have stood over for parties, or been dismissed, unless they were seasonably made, or a sufficient excuse shown for the omission.

Camp's death was suggested, and leave given to make his representatives defendants to the bill—no reason is shown why the complainant did not avail himself of this permission to revive—it does not appear that Camp died insolvent, and that there has been no administration. In the absence of any thing in the record of which to predicate such a presumption, it cannot be indulged. That the defect of parties may be remedied, and the suit be regularly proceeded in, the decree is reversed and the cause remanded.