## LYME v. ALLEN & A.

A fraud, which will require the interposition of a court of equity, must be such as to have deprived the injured party of the opportunity to avail himself of his rights in a court of law; and it must be an independent fraud, unmixed with any fault or negligence of the party seeking relief.

A court of equity will not grant an injunction or a new trial by way of relief against a judgment at law obtained by fraud, in a case where the party seeking relief has an adequate remedy by application to the court in which the fraud was perpetrated.

A bill in equity alleged that the plaintiffs were entitled to a legacy by virtue of a decree of the court of probate upon the solemn probate of a will; that the heirs at law of the testator duly appealed from said decree, and duly prosecuted such appeal for a certain time, until the said heirs, the executors, and other legatees entered into a corrupt and fraudulent agreement to appropriate the entire estate of the testator to their own use, and to defraud the plaintiffs of their legacy; that by virtue of this agreement the previous decree of the probate court was reversed, and by a subsequent decree the will was disapproved and disallowed. The bill prayed that the latter decree of the probate court be vacated

unless the defendants, or some of them, should pay to the plaintiffs the amount of their legacy under the will. The bill did not allege that the plaintiffs had no notice of the appeal, nor of the adjustment of the controversy denominated a "corrupt and fraudulent agreement." The circumstances and particulars of the alleged fraud were not disclosed by the bill. Upon demurrer, *held*, that the plaintiffs were not entitled to the relief sought by the bill.

IN EQUITY. This bill is brought by the town of Lyme against Harris Allen, Thomas J. Emmons, Jehiel H. Simonds, Joseph H. Peters, David C. Hall, Rodolph Hall, William C. Culver, The Trustees of Dartmouth College, and Daniel P. Wheeler.

The substantial allegations of the bill are, that David Culver, by his last will, devised certain property to the trustees of Dartmouth college, and also two thousand dollars to the plaintiffs; appointed the defendants Allen, Emmons, and Simonds his executors, and died June 14, 1865; that said will was proved in common form, August 17, 1865, and that said executors thereupon possessed themselves of the estate and property; that afterwards, upon the petition of certain of the heirs at law of said Culver for a reëxamination of the probate of said will, whereof due notice was given to all persons interested therein, said will was, by a decree of the judge of probate, October 17, 1866, approved and allowed in solemn form; that said heirs duly took an appeal from said decree, and duly prosecuted the same until the July term of this court, 1868; that at that term of the court, said heirs at law, said executors, and said trustees " entered into a corrupt and fraudulent agreement to appropriate the estate and property to their own use, and to defraud the plaintiff of said legacy;" that by virtue of said agreement, by them subscribed and placed upon the record, it was ordered by this court that said decree of the judge of probate be reversed, and that said will be disapproved and disallowed without costs to either party; that thereupon said executors, heirs, and trustees caused said estate and property to be placed, for their use and benefit, in the hands of Daniel P. Wheeler, who now holds the same; that by reason of said corrupt and fraudulent agreement, the plaintiffs, except they be relieved, &c., will be wholly defrauded of said legacy. The bill prays, that unless the defendants or some of them pay said legacy in full to the plaintiffs, said decree of the court of July term, 1868, may be vacated, &c.

To this bill the defendants filed a demurrer, assigning, *inter alia*, the following causes:

1. It is not allowed by the bill that the plaintiffs, though duly notified, appeared as a party to the reëxamination of the probate of said will, or to said appeal, or to any action in regard thereto; or that the plaintiffs ever requested the executors to appear to oppose the reëxamination of said appeal, or offered to indemnify them against the cost and expense of such opposition.

2. It is not alleged how, or in what particular, the alleged fraudulent and corrupt agreement was fraudulent or corrupt.

3. The bill discloses no equity.

*Lang* and *H. & G. A. Bingham*, for the plaintiffs.

*Hibbard* and *Carpenter*, for Wheeler and the heirs at law.

*Eastman* and *Blaisdell*, for Wheeler and for the trustees and executors.

FOSTER, J.   It will be observed that the bill alleges that the heirs at law " duly took an appeal " from the solemn probate of the will, and "duly entered their said appeal" and " duly prosecuted the same " in the proper law term of this court, which is the supreme court of probate.

It is to be presumed that all the requirements and forms of the law regulating appeals were observed, and consequently that notice of said appeal was given by publication in the usual form, and in accordance with secs. 1–4, ch. 188 of the General Statutes.   And it is not alleged that the complainants did not have actual notice of the entry and prosecution of the appeal, nor even that they did not have notice of the adjustment of the controversy.

Under these circumstances the complainants had full opportunity to appear and protect their rights and prosecute or defend their claims under the will.

This they might have done by applying to be made parties to the proceedings and to the record, and by giving security for costs,—as in the case of subsequent attaching creditors, who are thus permitted to defend a suit brought against their debtor ; or, by application to the executors to maintain the controversy for the benefit of the complainants, sustained, as it should have been, by proffer of indemnity;—in which case the complainants would not be without remedy against the executors in case their rights should be compromised or neglected.

But instead of this, they have seen fit to lie by and allow the cause to meet its fate without their interposition, taking the chances of a favorable result, and declining to participate in the costs of an expensive litigation.

Will equity relieve them against the consequences of a judgment and decree in the cause, under these circumstances ?

Equity will doubtless set aside a decree obtained by fraud, in certain cases,—as, for example, where, by reason of a false representation, a party interested in the cause has been prevented from appearing in court and asserting his rights, under circumstances showing no negligence on the part of the person thus defrauded.   And a bill to set aside a decree for such cause must state all the circumstances of the fraud, and the nature and extent of its operation in obtaining an improper decree.   Adams

Eq. *420. But the laches of a party lays no foundation for the interference of a court of equity. *Hendrickson* v. *Hinkley*, 5 McLean 213.

An applicant for *certiorari*, who alleges that he was misled by the opposite party, must show how he was misled, and that he has been diligent in ascertaining and asserting his rights. *Davis* v. *Randall*, 26 Ill. 243.

This bill merely states, in general terms, that a corrupt and fraudulent agreement was entered into between the executors and the heirs at law, without alleging any false representation to the complainants, and without disclosing any particulars of the fraud. In short, it sets out an agreement for the compromise of a litigation; and the substance of the allegation is not that any false representation, device, or concealment was practised, but only that the result of what is termed a fraudulent agreement between the parties to the litigation was prejudicial to the interests of the complainants not parties to the litigation. No circumstances are disclosed which indicate a fraud, but the compromise is simply denominated fraudulent. This is not sufficient to entitle the complainants to relief. To set aside a decree on the ground of fraud, actual, positive fraud must be shown. Mere constructive fraud is not sufficient. *Patch* v. *Ward*, L. R. 3 Ch. Ap. Cas. 203. If the complainants had been, as they might have been, parties to the proceeding in which the decree by agreement was entered up, it is manifest that no decree which they were unwilling to submit to could have been made by agreement.

The fraud which would require the interposition of a court of equity must be such as to have deprived the injured party of the opportunity to avail himself of his rights in a court of law, and it must be an independent fraud, unmixed with any fault or negligence of the party seeking relief. 1 Maddock's Ch. 64; *Blackhall* v. *Combs*, 2 P. Wms. 72; *Ware* v. *Horwood*, 14 Ves. 34; *Bateman* v. *Willoe*, 1 Sch. & Lef. 201;— and see *Shottenkirk* v. *Wheeler*, 3 Johns. Ch. 275; *Insurance Co.* v. *Hodgson*, 7 Cranch 333; *Walker* v. *Robbins*, 14 How. 584; *Carrington* v. *Holabird*, 19 Conn. 84; *Wingate* v. *Haywood*, 40 N. H. 441; *Dutil* v. *Pacheco*, 21 Cal. 438; *Phelps* v. *Peabody*, 7 Cal. 50; *Rice* v. *The Railroad Bank*, 7 Humph. 39; *Thatcher* v. *Gammon*, 12 Mass. 269, 270; 2 Story's Eq. Jur., secs. 887, 894, 895.

And no rule is more plainly settled than this,—that a court of equity will never grant an injunction or a new trial by way of relief against a judgment obtained even in the absence of a party, and upon a hearing entirely *ex parte*, in a case where the party seeking relief has an adequate remedy by application to the court in which the fraud has been perpetrated. Hilliard on New Trials 459; Hilliard on Injunctions 177, 181; *Hendrickson* v. *Hinckley*, before cited; *Tomkins* v. *Tomkins*, 3 Stockt. 512; *Thornton* v. *Borland*, 12 Cal. 440; *Essex* v. *Berry*, 2 Vt. 161; *Day* v. *Cummings*, 19 Vt. 496; *Musgrove* v. *Chambers*, 12 Tex. 32; *Ponder* v. *Cox*, 26 Geo. 485.

In *Phillips* v. *Phillips*, L. R. 1 P. & D. 173, where the petition was for the reversal of a decree of judicial separation obtained in the

absence of the petitioner, who had been duly cited but failed to put in an appearance, the judge ordinary said,—" In his petition, he must state the reasons of his absence, and the ground on which he asks to be relieved from the results of it : in other words, he must state how it happened that the decree was obtained in his absence, and he must explain the circumstances that gave rise to his absence ; and he must further state circumstances calculated to satisfy the court that the decree was wrong.    The court may then, upon a review of all the matters alleged and proved, proceed to reverse or to affirm the decree ; but in coming to a decision, it will be at liberty to consider how far the absence of the petitioner was his own fault or was excusable.    Every presumption is in favor of the decree."

Reversal of the decree in this case is for the purpose and must have the effect to open the litigation concluded by the decree in the probate court.

As a court of equity, we cannot consider any question of fact raised between the same parties in any other court.    If two parties have once before a court of competent jurisdiction litigated any question of fact, and that question has been finally decided, it is not reasonable that either of them in any other court should reöpen it.    The court of chancery will respect the decision of the tribunal in which the decree was made.

It is proper, therefore, that when the same question is raised between the same parties to the former litigation, or those claiming under them, that they should be estopped.    Per Lord PENZANCE, Mar. 7, 1871, in *Spencer* v. *Williams*, L. R. 2 P. & D. 230.

We apprehend the same considerations apply to the case of one who might, should, and would have been a party to the prior litigation, but for his own laches.

But if for any sufficient reason the judgment is erroneous, the court of law in which the judgment was rendered has power, as a court of law, to set it aside on proper terms ; " and this relief," it is said, " can be better administered upon application or petition, and rule to show cause, than by bill in chancery on the equity side of the court." *Bellows* v. *Stone*, 14 N. H. 203 ; *Judge of Probate* v. *Webster*, 46 N. H. 520.

And it is said that before equity will grant relief, three things must concur,—ignorance of the party's rights when the judgment was rendered, diligence on the part of the complainant, and that adequate relief cannot be had at law.    *Taylor* v. *Sutton*, 15 Geo. 103 ; *Hendrickson* v. *Hinckley*, 17 How. 443.

None of these essentials are disclosed or averred by this bill, and our conclusion is that the demurrer must be sustained.

*Bill dismissed.*